IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Reunion Power, LLC, and Macquarie Capital (USA) Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Garwin McNeilus, an individual; G. McNeilus, LLC; McNeilus Wind Farm, LLC; GarMar Wind I, LLC; Garwind, LLC; GM, LLC; Grant Windfarm, LLC; GM Transmission, LLC; Ashland Windfarm, LLC; BT, LLC; Brandon Windfarm, LLC; Elsinore Wind, LLC; Henslin Creek Windfarm, LLC; K&K, LLC; Rose Creek Wind, LLC; SF, LLC; SG, LLC; Triton Windfarm, LLC; Wasioja Wind, LLC; Wilhelm Windfarm, LLC; Zumbro Windfarm, LLC; and Grant McNeilus, an individual, <br><br> Defendants. | Civil Action No. <br><br><br> **COMPLAINT** <br><br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Reunion Power, LLC and Macquarie Capital (USA) Inc., file this complaint against defendants Garwin McNeilus, individually and as owner and operator of what will be defined herein as the "McNeilus Wind Farms," and certain limited liability companies owned or controlled by Garwin McNeilus. Reunion and Macquarie also assert claims against Grant McNeilus as an owner of certain membership interests in one or more of the limited liability companies that are at issue in this action.

Reunion and Macquarie state and allege as follows:

## PARTIES

1. Plaintiff Reunion Power, LLC ("Reunion") is, and was at all times relevant to this action, a limited liability company organized and existing under the laws of the State of New Jersey. Reunion maintains its principal place of business at 82 Elm Street, Manchester Center,

Vermont 05255. Reunion is, among other things, an owner, developer, and manager of power generation facilities.

2. Plaintiff Macquarie Capital (USA) Inc. ("Macquarie") is, and was at all times relevant to this action, a corporation organized and existing under the laws of the State of Delaware. Macquarie maintains its principal place of business in the United States at 125 West 55th Street, New York, New York 10019. Macquarie is, among other things, in the business of energy generation finance and advisory services.

3. Defendant Garwin McNeilus ("McNeilus") is, and was at all times relevant to this action, a citizen and resident of Dodge County, Minnesota and the owner, operator, and/or managing agent of the "McNeilus Wind Farms," as hereinafter defined.

4. Defendant McNeilus owns, operates, or otherwise controls the ownership of approximately 65 megawatts (MW) of wind power generation facilities and transmission assets located in Dodge Center and Adams, Minnesota. The wind power generation assets and transmission assets are owned by approximately 27 individual special purpose companies ("SPCs"), some of which are named as defendants to this action. The SPCs and the assets they hold are sometimes referred to collectively as the "McNeilus Wind Farms."

5. Defendant G. McNeilus, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

6. Defendant McNeilus Wind Farm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

7. Defendant GarMar Wind I, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

8. Defendant Garwind, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

9. Defendant GM, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

10. Defendant Grant Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

11. Defendant GM Transmission, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

12. Defendant Ashland Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

13. Defendant BT, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

14. Defendant Brandon Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

15. Defendant Elsinore Wind, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

16. Defendant Henslin Creek Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

17. Defendant K&K, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

18. Defendant Rose Creek Wind, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

19. Defendant SF, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

20. Defendant SG, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

21. Defendant Triton Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

22. Defendant Wasioja Wind, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

23. Defendant Wilhelm Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

24. Defendant Zumbro Windfarm, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located in Dodge County, Minnesota.

25. Defendant Grant McNeilus, is, and was at all time relevant to this action, a citizen and resident of Dodge County, Minnesota, and owns or controls membership interests in certain of the SPCs that have wind generation assets and are part of the McNeilus Wind Farms.

## JURISDICTION AND VENUE

26. This court has jurisdiction over this action by reason of 28 U.S.C. §1332(a) and (c), as Reunion and Macquarie are not citizens or residents of Minnesota for the purposes of diversity, and all defendants are residents and citizens of Minnesota. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

27. Venue is founded upon 28 U.S.C. §1391(a), as defendants reside in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district. In addition, McNeilus resides and maintains an office in this judicial district, and the companies and assets that are the subject of this action are found in this judicial district.

## GENERAL ALLEGATIONS

28. From about September 2002 to the present, McNeilus developed a series of power generation and transmission facilities that are popularly referred to as "wind farms." The wind farms are built with .90, .95, 1.5, and 1.65 MW NEG Micon wind turbines manufactured by NEG Micon (a company that has since been acquired by Vestas), each with wind rotors ranging from 52 to 82 meters in diameter. As previously defined, all of these assets are believed to be owned by the 27 SPCs and encompass the McNeilus Wind Farms, which are located in Dodge and Mower Counties and are headquartered in Dodge Center, Minnesota.

29. On or about December 14, 2007, Reunion and McNeilus entered into an agreement (the "Agreement") under which Reunion would acquire 100% of the ownership of the McNeilus Wind Farms. The purchase by Reunion of the McNeilus Wind Farms was to be effectuated by Reunion's purchase of McNeilus' membership interests in the SPCs, whereby Reunion would own the SPCs holding the wind power generation facilities and transmission assets, including approximately 90 to 110 acres of land and other wind farm assets. Under the Agreement, "the parties agree to work together exclusively on the contemplated transaction for a period of 90 days following the execution of this Proposal which can be extended by mutual consent." If the closing of the transaction occurred on or before January 31, 2008, Reunion was to pay McNeilus $41,494,826.32.

30. The Agreement and the later amendments thereto were intended to benefit Macquarie, which had agreed to provide advisory project finance services for the transaction that were intended to benefit the parties to the transaction. In addition, Macquarie was to arrange and provide financing for the purchase of the McNeilus Wind Farms. Representatives of and legal counsel for Macquarie met numerous times with McNeilus and his representatives and legal counsel and was at all relevant times known to McNeilus.

31. The Agreement obligated McNeilus to cooperate with Reunion as Reunion conducted its due diligence regarding the McNeilus Wind Farms. As part of the due diligence process, McNeilus was to provide Reunion with:

- Corporate and limited liability company documents
- All Contracts and commitments respecting:
    - Power Purchase Agreements
    - Interconnection Arrangements
    - O&M and TSA Agreements
    - Vestas Settlement Agreements
    - Easement and Land Agreements
- Transmission Facilities Assets and Information including:
    - Description of Transmission Facilities
    - Land Rights of Way for the length of the transmission facilities
- SCADA, including:
    - System Description (including data storage capability)
    - Actual SCADA data
- Regulatory/Permits/Environmental Matters, including:
    - Listing of all permits, approvals and authorizations
    - Known violations, notices, etc.
    - Environmental reports
- Project Financial Information and Tax Filings, including:
    - 3 years annual Financial Statements and Tax Returns
    - Current interim Financial Statements since last annual
    - Monthly Operating reports for the prior 12 months
    - Monthly Utility Invoices (past 3 years)
- Property Taxes, including:
    - Rates
    - Historic payments
- Employment Contracts
- Indebtedness
- Litigation and Claims

7

32.     The Agreement also obligated McNeilus to obtain and/or confirm all necessary third-party consents, regulatory approvals, and generally cooperate with Reunion and Macquarie in the transfer of the McNeilus Wind Farms from McNeilus to Reunion. The Agreement further obligated McNeilus to keep Reunion and Macquarie fully informed of the status of the McNeilus Wind Farms, including all material aspects of its business such as power sales, state incentive payments, federal production tax credits, land leases, governmental and regulatory approvals, and the like.

33.     Under the Agreement, McNeilus expressly agreed and represented to Reunion and Macquarie that "time was of the essence" in supplying Reunion and Macquarie with this information, including confirming and/or obtaining necessary governmental and regulatory approvals. The purpose, quite clearly, was to enable Reunion and Macquarie to close the transaction in a timely manner and ensure that the wind farms to be purchased by Reunion complied with all applicable laws and regulations. In agreeing to supply this information, McNeilus also promised that he would provide the necessary staff and resources to facilitate the transfer of such information in a timely manner. Justifiably relying upon the Agreement—and further representations and promises made by McNeilus—Reunion and Macquarie retained legal counsel and expended significant management time and incurred substantial costs in an effort to consummate the purchase of the McNeilus Wind Farms.

34.     A major issue in the purchase of the McNeilus Wind Farms was ensuring compliance with U.S. Federal Regulatory Commission ("FERC") regulations. In fact, prior to entering into the Agreement, McNeilus represented to Reunion that it had all governmental and regulatory approvals required by law. For several months after the Agreement was signed in December 2007, McNeilus and his legal counsel continued to represent that McNeilus complied